E. W. LONG v. TAXING DISTRICT OF SHELBY COUNTY.

CORPORATION, MUNICIPAL. *Ordinances.* A municipal corporation can-
    not, without special legislative authority, pass an ordinance requiring
    merchants, part of whose business is the buying and repacking of
    loose cotton, in addition to the other conditions prescribed by law
    and ordinance for taking out a merchant's license, to give bond to
    keep in a book specially provided for the purpose a daily record of
    the name of each seller of loose cotton, and the quantity of each pur-
    chase, and that he will keep such book at all times open to the in-
    spection of the police.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
county.   J. O. PIERCE, J.

L. & E. LEHMAN and W. M. RANDOLPH for Long.

C. W. HEISKELL for Taxing District.

COOPER, J., delivered the opinion of the court.

The plaintiff in error was arrested by warrant and
fined by the president of the commissioners of the
Taxing District ten dollars, and again, upon appeal, by
the circuit court, without a jury, for violating an ordi-
nance of the Taxing District of Shelby county, and ap-
pealed in error.

By ordinance 368½ of the Taxing District, it is
provided: "That any person engaged within the lim-
its of the district in the business of buying and re-

packing loose cotton, shall be deemed a merchant or trader, and no person shall engage in such business except after taking out a merchant's license in the mode prescribed for merchants generally, and complying with the terms and conditions following: No person shall engage in the business aforesaid unless his license state on the face of it that it is taken out with a view to engage therein; and in addition to the other conditions prescribed by law and ordinance for taking out a merchant's license, such person shall give a bond in the penalty of $1,000, conditioned that he will keep in a book specially provided for the purpose a daily record of the name of each seller of loose cotton, and the quantity of each purchase, and that he will keep such book at all times open to the inspection of the police. A failure to comply with these requirements or the terms of said bond, shall be deemed a misdemeanor."

The plaintiff in error, E. W. Long, is engaged in the cotton business in the Taxing District of Shelby county, has a place for the business, and a license from the Taxing District for one year from April, 1881, to April, 1882. In the course of his business he buys and sells cotton in bales, loose cotton, ginned and once baled but separated from the bales, and loose cotton ginned, and cotton in the seed. The buying and repacking of loose cotton is the larger part of his business. He also, in the course of his business, buys and repacks or bales the loose cotton bought by him, and sells the same in the bales. The misdemeanor with which he is charged consisted in this,

that he failed and refused, in April, 1881, after he
had obtained and paid for the aforementioned license,
and after the passage of the above ordinance, to give
the bond required by the ordinance, to keep the book
prescribed, or to keep a daily record of the name of
each seller of loose cotton, and the quantity of each
purchase, and to keep such book open to the inspec-
tion of the police.

It was proved by a witness, the president of the
cotton exchange, that loose cotton is liable to theft,
and that it is exceedingly difficult to ferret out the
thief.    When the dealers in loose cotton are interro-
gated, they refuse to give the names of the persons
from whom they buy, or to permit their books to be
examined.    The witness says that with the ordinance
in question faithfully observed, much of the dishonest
dealing in loose cotton could be broken up.    The
loose cotton which accumulates during a season at
Memphis is called the "city crop," and makes a con-
siderable item, and would be much larger, and enure
to the benefit of the true owners, were it not for the
dishonest dealing in it.

The evidence of this witness was excepted to by
the defendant, but admitted by the court.

A city council, it has been well said, is a minia-
ture legislature, authorized to legislate for a locality,
and their ordinances within the power entrusted have
all the force of laws passed by the Legislature.    But
there is a broad distinction between the general power
to make laws and the special power of a municipal
corporation to enact by-laws.    The corporate council

is restrained to such matters, whether specially enumerated or included under a general grant, as are not at variance with the general laws of the State, are reasonable, and adapted to, or proper for the purposes of the corporation. Authority to make by-laws does not include the power to legislate on general subjects. Whenever a by-law seeks to alter a well-settled principle of the common law, or to establish a rule interfering with the rights of an individual or the public, the power to do so must come from plain and direct legislative enactment. No implied power to pass by-laws, and no express general grant of the power, can authorize a by-law which conflicts either with the national or State Constitution, or with the statutes of the State, or with the general principles of the common law adopted or in force in the State. Ordinances must be consistent with public legislative policy, may regulate not restrain trade, and must not contravene common right. These are general principles universally recognized, and to some extent illustrated by our own cases: *Smith* v. *Mayor*, 3 Head, 245; *Maxwell* v. *Jonesboro*, 11 Heisk., 257; *Trigally* v. *Mayor*, 6 Cold., 382; *Hodges* v. *Mayor*, 2 Hum., 61; *Rateigh* v. *Dougherty*, 3 Hum., 11; *Mayor* v. *Winfield*, 8 Hum., 707; *Robinson* v. *Mayor*, 1 Hum., 155. The difficulty is in applying these principles to the facts of particular cases. The limit of municipal authority has never been so clearly and accurately defined as to enable the courts to say readily when it has been overstepped.

The particular ordinance under consideration is not

directly authorized by any special provision in the acts under which the Taxing District of Shelby county has been organized. It is sought to be sustained under certain general provisions, which are thus worded:— "The local government established by this act shall have power to declare by local laws what acts shall be misdemeanors, and, when committed within the Taxing District, to punish the offenders by fines and forfeitures." "And they shall have power over all other affairs in the Taxing District in which the peace, safety and general welfare of the inhabitants are interested": Acts of 1879, ch. 11, sec. 3, and 1879, ch. 84, sec. 1.

If the only power given to pass ordinances be by a general provision, the provision would be liberally construed. But if the general grant is given in connection with, or at the end of a long list of specific powers, the power conferred by the general clause would be restricted by reference to the other provisions of the act: *City Council* v. *Plank Road Co.*, 31 Ala., 76; *Mount Pleasant* v. *Breeze*, 11 Iowa, 399. Even in the broadest view, the general power would only authorize suitable ordinances for administering the government of the city, the preservation of the health and comfort of its inhabitants, the convenient transaction of business within its limits, and for the performance of its general duties required by law of municipal corporations. It would not authorize general legislation proper only for the Legislature of the State. To sustain such legislation by a municipal council, there must be special authority.

And this brings us to the real difficulty in the ordinance before us. The ordinance does not regulate the administration of the local government, the convenient transaction of business, or the conduct of the citizens with a view to health and comfort, nor is it such as can be said to fall within the general duties of municipal bodies. It is rather intended to facilitate the enforcement of the criminal laws against theft of loose cotton. If the city can pass ordinances for this purpose in one branch of the criminal law, or for the detection of theft in one article, it may do the same thing for any other branch of the criminal law, or for the detection of theft in the case of any other article. If the municipality can require one class of merchants to keep a particular set of books open to police inspection in one trade, it may extend the requirement into every branch of trade and to all kinds of commercial books. But the enactment of criminal laws, and of all legislation necessary for the enforcement of those laws either in the way of detection or punishment, belongs to the Legislature of the State.

A marked peculiarity of our race has been a disinclination to have the private affairs of the citizen laid open to the public, except where it was imperatively required for the public welfare. This feeling has caused the insertion into the Constitution of the United States of its fourth amendment, and worded the seventh section of the bill of rights of our State Constitution. "The right of the people," says the former, "to be secure in their persons, houses, papers

and effects against unreasonable searches and seizures, shall not be violated." And the latter provides: "That the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures." Whenever the public welfare demands a departure from these fundamental principles of individual liberty and common right, it is for the Legislature of the entire commonwealth to determine, and to prescribe the mode and limits of the departure. The right cannot be conceded to a municipal corporation, at any rate in the absence of a special legislative grant. The "general welfare" clause, as it has been called, of a municipal charter, will not authorize an ordinance in advance of State legislation.

The judgment of the circuit court will be reversed, and judgment entered here for defendant.

This also disposes of the case of *B. H. Hayden* v. *City of Memphis.*