SOUTHERN RAILWAY COMPANY, Appellant,

*v.*

CITY OF KNOXVILLE, Appellee.

442 S.W.2d 619.

(*Knoxville,* September Term, 1968.)

Opinion filed March 7, 1968.

CLYDE W. KEY, Knoxville, for appellant.

W. P. BOONE DOUGHERTY, Knoxville, for appellee; BERNSTEIN & DOUGHERTY, Knoxville, of counsel.

## PER CURIAM.

This case filed under our Declaratory Judgment Statutes questions the authority of the City of Knoxville by ordinance and implementing resolution thereunder to require Southern Railway Company to construct, operate and maintain automatic signals and crossing gates at several street-railway crossings at the sole expense of Southern Railway Company.

The ordinance in question is Section 31-2 of the Knoxville City Code, which reads as follows:

There shall be erected at all grade crossings on the line of any railroad in the City over which trains are operated, electric signals, crossings gates or flagmen or some other warning approved by the City Council. Such warning shall be provided and maintained by the railroad without expenses to the City, and when warning devices are used they shall be erected and maintained under the supervision of the City Engineer.

Pursuant to this ordinance the City Council, by resolution, required Southern Railway Company to erect and maintain signals and gates at the street-railway crossings on Morrell Road, Agnes Avenue, Ault Road, and Spring Hill Road. The resolution also required signals at Beverly Road and Greenway Drive. After a hearing the chancellor directed Southern Railway Company to comply with the resolution. Upon appeal from this decree this Court, under authority of *Nashville, Chattanooga,*

*& St. Louis Railway Co. v. Walters,* 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935), remanded the cause for further hearing on the issue of whether or not under the facts with respect thereto the ordinance and resolution requirements are unreasonable and general, or as to any crossing, 221 Tenn. 232, 426 S.W.2d 172. Other issues raised on this first appeal were reserved and will be considered in this opinion.

Upon remand further proof was taken and the chancellor found the requirements of gates and signals at Morrell Road, Ault Road and Spring Hill Road were reasonable; that the requirements of signals on Agnes Avenue was reasonable, but the requirement of gates at this crossing was unreasonable; that the requirement of signals on Beverly Road and Greenway Drive were unreasonable. From this decree of the chancellor Southern Railway Company has perfected its appeal.

Southern Railway Company alleges the City does not possess power under its charter to require erection of such protective devices at street-railway crossings at the sole expense of Southern.

The City claims charter power by Section 5(41) of its charter. This section expressly empowers the City to require at the expense of the railroad grade separations at street-railway crossings, but does not mention protective devices such as at issue in the case at bar. The chancellor found this section of the charter did not empower the City to enact the ordinance at issue and we concur. The chancellor did find the City was empowered to enact this ordinance under the following general provisions of its charter:

Sec. 5. *Be it further enacted,* That the city as incorporated under this Act shall have the power by ordinance:

\* \* \* \* \* \*

(16) To define, prohibit, suppress, prevent, and regulate all acts, practices, conduct, business, occupation, callings, trades, uses of property and all other things whatsoever detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the city, and to exercise general police powers under the provisions of this Act and the general law.

\* \* \* \* \* \*

(49) To pass all ordinances necessary to the health, convenience, safety and general welfare of the inhabitants of the city, and to carry out the full intent, corporate purposes, and meaning of this Act as fully as if specifically authorized, and as if the powers were expressly conferred.

(50) To make regulations for the general welfare, health and safety of the public within the corporate limits and not otherwise herein specifically provided for.

\* \* \* \* \* \*

(52) To have and exercise all powers which now are or hereafter would be competent for this charter specifically to enumerate, as fully and completely as though said powers were specifically enumerated herein; and no enumeration of particular powers by this charter shall be held to be exclusive.

The general rule with respect to power exercised by municipal corporations is stated in the case of *City of*

*Chattanooga v. Tennessee Electric Power Co.*, 172 Tenn. 524, 112 S.W.2d 385 (1935), as follows:

It is well settled that a municipal corporation can exercise only such powers as are expressly granted in its charter or arise by necessary implication in order to carry out the declared objects and governmental purposes for which the corporation was created. 172 Tenn. at 533, 112 S.W.2d at 388.

■ We think under the above copied sections of the City of Knoxville Charter, the City has power by necessary implication to require the protective devices where reasonably needed at street-railway intersections, and an ordinance requiring such has a reasonable and substantial relationship to the promotion of health, safety and comfort of the general public.

Southern Railway Company alleges the ordinance is invalid as being inconsistent with and repugnant to Sections 65-1208(1) and 65-1105, T.C.A. These statutes are as follows:

65-1208. In order to prevent accidents upon railroads, the following precautions shall be observed:

(1) The officials having jurisdiction over every public road crossed by a railroad shall place at each crossing a sign, marked as provided by sec. 65-1105; and the county court shall appropriate money to defray the expenses of said signs; and the failure of any engine driver to blow the whistle or ring the bell at any public crossing so designated by either the railroad company or the said public official, shall constitute negligence * * *.

65-1105: The railroad and public utilities commission and the commissioner of the department of highways

and public works are empowered and directed after such hearings as they may see fit to have, to determine upon a form of railroad crossing sign, which shall be the standard for the state.

Municipal ordinances in conflict with and repugnant to a State law of a general character and state-wide application are universally held to be invalid. The difficulty arises in the application of this principle to the facts in the particular case. See *Long v. Taxing District of Shelby County,* 75 Tenn. 134 (1881); *Katzenberger v. Lawo,* 90 Tenn. 235, 16 S.W. 611, 13 L.R.A. 185 (1891); *Hurt v. Yazoo & Miss. Valley Railway,* 140 Tenn. 623, 205 S.W. 437 (1918); *Henderson v. City of Knoxville,* 157 Tenn. 477, 9 S.W.2d 697, 60 A.L.R. 652 (1928); *City of Memphis v. Southern,* 167 Tenn. 181, 67 S.W.2d 552 (1934); *State ex rel. Beasley v. Mayor and Aldermen of the Town of Fayetteville,* 196 Tenn. 407, 268 S.W.2d 330 (1953); *City of Red Bank-White Oak v. Abercrombie,* 202 Tenn. 700, 308 S.W.2d 469 (1957).

Southern Railway Company cites and relies upon the *City of Memphis v. Southern Railway,* supra case. In this Memphis case the City under a general grant of charter powers enacted an ordinance requiring the railroad at its own expense to construct a grade separation at a street-railway crossing. At the time of the enactment of this ordinance, Chapter 132, Public Acts of 1921, was in effect, by which statute the Legislature provided a scheme for the elimination of railway-highway crossings by constructions of grade separation crossings with the expense to be divided between the railroad and the State. Chapter 132 is now carried as T.C.A. 65-1107 through 65-1112. The Court held the ordinance void as being in conflict with this State statute and required Memphis

to bear the cost of the grade separation. In this opinion the Court said:

The ordinance herein relied on by the city of Memphis was not enacted until several months after passage of the Public Act of 1921. At the time of the passage of this ordinance, the policy of the state had been definitely settled, and the Legislature had determined that the railroad companies were not to be onerated with the entire expense incident to the elimination of grade crossings. Since this declaration of legislative policy, in the absence of special authority, we are not able to conclude that a municipal corporation, endowed merely with general power to regulate the use of its streets and the operation of railroad trains within its limits, can require of a railroad company at its sole expense such an undertaking as is herein contemplated.

The separation of grades at the crossing of a public road and a railroad is always an expensive proceeding. It involves either a considerable fill or a considerable excavation, often both, an overhead bridge, and approaches. The expense is greatly enhanced when there is such an undertaking in a populous city. In the latter case the compensatory outlay for the approaches is usually staggering. Since the state has so restricted its immediate power in the premises, when proceeding through its immediate agents and in the maintenance of its own highways, it cannot be conceived that the state would delegate unlimited power in this respect to a subordinate governmental agency except by plain language. We think no such unlimited power can be drawn by implication from general provisions in a municipal charter. 167 Tenn. at 188, 67 S.W.2d at 554.

The gist of the argument here is that under the holding in *City of Memphis v. Southern Railway Co.*, supra, the City of Knoxville cannot under a general grant of charter powers enact the ordinance and implementing resolution here at issue in face of the general statutes of state-wide application on the same subject, to-wit: T.C.A. 65-1208 (1) and 65-1105.

This Court, speaking through now Chief Justice Burnett, in *State ex rel. Beasley v. Mayor and Aldermen of the Town of Fayetteville,* supra, said:

An ordinance enacted in the exercise of police power is not necessarily inconsistent with a State law on the same subject unless the city provides for greater restrictions or makes higher standards than is provided or made by the statute.

In *LaCrosse Rendering Works, Inc. v. City of LaCross, et al.,* 231 Wis. 438, 285 N.W. 393, 124 A.L.R. 511 (1939), the Court said:

"The mere fact that the state, in the exercise of the police power, has made certain regulations does not * * * prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal by-law are not in themselves pernicious, as being unreasonable or discriminatory, both will stand but municipal authorities, under a general grant of power, cannot adopt ordinances which infringe the spirit of a state law or are repugnant to the general policy of the state."

"As a general rule, additional regulation to that of the state law does not constitute a conflict therewith. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute

requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescriptions." 285 N.W. at 401.

We do not find the statutes, T.C.A. 65-1208(1) and 65-1105, relied on here to be in conflict with the ordinance at issue. The ordinance simply requires more than the statute in placing of protective devices at street-railway crossings. The ordinance does not authorize anything the statute forbids nor does it forbid anything the statute requires. Both the statute and the ordinance can co-exist and be effective.

Southern Railway Company alleges this ordinance per se violates both the due process and the commerce clauses of the Constitution of the United States, citing *Nashville, Chattanooga & St. Louis Railway v. Walters,* supra, and *Atchison, Topeka & Santa Fe Railway v. Public Utilities Commission of the State of California,* 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51 (1953).

Southern Railway Company admits the entire cost of the protective devices at street-railway crossings can, under proper circumstances, be charged to a railroad. The argument here is that the ordinance is so drawn that it requires, on the issue of who is to bear the expense of a crossing, one of two possible findings; that it, the railroad bear the entire expense of the crossing at issue, or the ordinance as to the crossing at issue is unreasonable and void. There is, in fact, no middle ground wherein it might be found as to a particular crossing to be reasonable to charge the railroad with part but not all the cost.

We agree that under the holdings of *Nashville* and *Atchison* there could be a case arising from a partic-

ular set of facts where it would be reasonable to charge only a part of a crossing to the railroad, and an ordinance requiring all the cost be charged to a railroad would be void as applied to that particular case, but this would not result in making the ordinance void per se but only as to a particular case. On this point Southern Railway Company in its brief states:

It might be argued that the ordinance is saved by the possibility of voiding an order entered pursuant thereto as unreasonable. Thus, the evaluation required by Atchison is still possible. As a practical matter, however, this possibility is illusory since it would require an abandonment of the crossing protection which, by hypothesis, the City considers essential. Faced with such an unacceptable alternative, it is inevitable that both the City council and a reviewing court will stretch to uphold the reasonableness of charging the expense to the railroad. The result, therefore, is to deprive the railroad of a fair and meaningful inquiry regarding the fairness and reasonableness of the allocation of costs.

We agree under the holding of *Nashville* and *Atchison* the wisdom of enacting the type of ordinance here at issue is questionable, but we do not agree with the conclusion of Southern Railway Company stated in its brief above quoted that faced with two alternates of all or nothing the courts will stretch to uphold reasonableness or charging of all the expense to the railroad. This has already been shown in the case at bar where the chancellor, upon remand, deleted entirely protective devices from two crossings required by the ordinance and implementing resolution.

*Atchison, Topeka and Santa Fe Railway Co. v. Public Utilities Commission,* supra, involved enlarging railway underpasses and installation of an underpass where there had been a grade crossing, with the railroad required to bear one-half of the expense. In this case the court said:

Rather, in the case at bar the improvements were instituted by the State or its subdivisions to meet local transportation needs and further safety and convenience, made necessary by the rapid growth of the communities. In such circumstances, this Court has consistently held that in the exercise of the police power, the cost of such improvements may be allocated all to the railroads. (Citing cases). There is the proper limitation that such allocation of cost must be fair and reasonable. *Nashville, C. & St. L. Ry. Co. v. Walters,* 294 U.S. 405, 415, 55 S.Ct. 486, 79 L.Ed. 949, 955, and The cases there cited. 346 U.S. at 352, 74 S.Ct. at 96.

In the case at bar we do not deem it necessary to detail the proof taken on the issue of reasonableness. This proof is by a traffic court, both rail and vehicle, the terrain of the area of the crossings, and the fact all the crossings were on city streets. Upon remand the chancellor applied the test of fairness and reasonableness to the action of the City in charging all of the cost to the railroad. Where the action of the City was found unreasonable to a particular crossing or a particular safety device, such was deleted from the force of the ordinance and the implementing resolution.

The judgment of the lower court is affirmed.

CRESON, JUSTICE, not participating.