DLS, INC. d/b/a Diamonds and Lace Showbar; Ann Martin; Renita Henegar; and Michelle Morjal, Plaintiffs,

v.

CITY OF CHATTANOOGA; Gene Roberts, Mayor; Chattanooga City Council; Mai Bell Hurley, Chairperson; Don Eaves; David Crockett; David Disteffano; Yusef Hakeem; John Lively; Leamon Pearce; Marti Rutherford; Ron Swafford; Ralph Cothran, Chief of Police; Randall Nelson, City Attorney; Ervin Dinsmore, Safety Administrator, Charles W. Burson, Tennessee Attorney General, Defendants.

No. 1:95–cv–333.

United States District Court, E.D. Tennessee.

Oct. 12, 1995.

---

**194**

Jerry H. Summers/Jimmy F. Rodgers, Jr., Chattanooga, TN, for Plaintiffs.

Phillip A. Noblett/W. Shelley Parker, Jr., Chattanooga, TN, for Defendants.

### MEMORANDUM

EDGAR, District Judge.

This case is before the Court on the plaintiffs' application for a preliminary injunction against the City of Chattanooga ("City") and the other defendants seeking to enjoin enforcement of CHATTANOOGA CITY CODE §§ 25–84, 25–85, 11–434(j), 11–435(c), and TENN. CODE ANN. § 39–13–511. By separate order entered this date, this Court has made a recommendation that insofar as this case involves a challenge to TENN.CODE ANN. § 39–13–511 the case should be transferred by the Joint Panel on Multi–District Litigation ("Panel") to the United States District Court for the Middle District of Tennessee. Procedurally this transfer will have to be made by an order of the Panel. In anticipation that this transfer will be accomplished, the Court will, therefore, deal only with the remainder of the case as it applies to the above-named Chattanooga city ordinances.

The factors which this Court must consider in determining whether a preliminary injunction should issue are the following: (1) the likelihood of plaintiffs' success on the merits; (2) whether the injunction will save the plaintiffs from irreparable injury; (3) whether the injunction will harm others; and (4) Whether the public interest would be served by the injunction. *In re DeLorean Motor Company*, 755 F.2d 1223, 1228 (6th Cir.1985).

### Likelihood of Success on the Merits

The City concedes that its § 25–84 is not directed at nude dancing. Furthermore, § 11–434(j), which only prescribes the contents of signs to be placed in adult-oriented establishments, clearly does itself not prohibit nude dancing. Therefore, the focus must be on the two remaining ordinances.

CHATTANOOGA CITY CODE § 25–85 reads in its entirety:

(a) *Definitions.* As used in this section, the following terms shall have the meanings indicated:

*Public place* shall include: streets, sidewalks or highways; transportation facilities; schools; places of amusement; parks, playgrounds; restaurants; nightclubs; cocktail lounges; burlesque houses; bars; cabarets; taverns; taprooms; private fraternal, social, golf or country clubs; or any place that allows the consumption of intoxicating beverages on the premises.

*Wholly or substantially exposed to public view,* as it pertains to breasts, shall mean the showing of the female breast, in a public place, with less than a fully opaque covering of any portion of the breast below the top of the nipple.

(b) *Prohibited acts.* It shall be unlawful for any person to perform in a public place, or for any person who owns or operates premises constituting a public place to knowingly permit or allow to be performed therein, any of the following acts or conduct:

(1) The performance of acts of simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;

(2) The actual or simulated touching, caressing or fondling of the breasts, buttocks, anus or genitals in public; or

(3) The actual or simulated public displaying of the pubic hair, anus, vulva or genitals;

(4) The appearance by any female in a public place so costumed or dressed that one or both breasts are wholly or substantially exposed to public view, or any owner or operator of premises constituting a public place knowingly permitting or allowing any such person to appear on the premises owned or operated by him.

(c) *Penalty.* Any person violating any of the provisions of this section, upon conviction by the court, may be imprisoned for not more than thirty (30) days, and shall be fined not less than twenty-five dollars ($25.00), nor more than fifty dollars ($50.00) for each violation.

Nude dancing, under legal precedent, is considered to be expressive conduct that is marginally protected by the First Amendment. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991), *Schad v. Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). Unfortunately, the law is not very clear about what should happen when government regulations and First Amendment rights collide over nude dancing. The Supreme Court's decision in *Barnes* contains four separate opinions on the subject. Deriving the significance of the *Barnes* decision is, as the Sixth Circuit recently pointed out, like reading tea leaves. *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 134 (6th Cir.1994). Nonetheless, since Justice Souter's opinion resolved the issue before the Supreme Court on the narrowest grounds, we must look to that opinion for guidance. *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *Triplett Grille,* 40 F.3d at 133–35.

The result of *Barnes* was that Indiana's public indecency statute does not violate the First Amendment. That statute does not in any significant way differ from CHATTANOOGA CITY CODE § 25–85. Justice Souter said that the Indiana statute passed the four-part test of *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[1] Justice Souter concluded that the intent of the enacting legislative body is not important; what matters is whether the nude dancing ban addresses a governmental interest. *Barnes,* 501 U.S. at 581, 111 S.Ct. at 2468, 115 L.Ed.2d at 522 (Souter, J., concurring). He concluded that nude dancing can be banned since, as a matter of law, such a ban furthers

---

1. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). That test is that in order to withstand constitutional scrutiny, the ordinance must "(1) be within the constitutional powers of government; (2) further a substantial government interest; (3) the government interest must be unrelated to the suppression of free expression; and (4) the [ordinance] must pose an incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest." *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 226 (6th Cir.1995).

a governmental interest in preventing prostitution, sexual assault and associated crimes. *Id.* at 581–82, 111 S.Ct. at 2468–69, 115 L.Ed.2d at 522–23. He also said that Indiana's nude-dancing ban is unrelated to suppression of free expression and is no greater than is essential to further the governmental interest. *Id.* at 582–87, 111 S.Ct. at 2469–71, 115 L.Ed.2d at 523–25.

The plaintiffs point to the Sixth Circuit's recent decision in *Triplett Grille* and contend that § 25–85 is vague and overbroad. In *Triplett Grille,* the Court of Appeals examined an Akron, Ohio ordinance which, on its face, is identical to the Indiana public indecency statute, and similar to CHATTANOOGA CITY CODE § 25–85. The Court found the Akron ordinance to be overbroad because

The Akron public indecency ordinance at issue here prohibits all public nudity, including live performances with serious literary, artistic, or political value. The ordinance makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions. Instead, Akron's wide ban on public nudity sweeps within its ambit expressive conduct not generally associated with prostitution, sexual assault, or other crimes.

40 F.3d at 136. In short, since the Akron ordinance did not contain an artistic-cultural-political exemption, it was overbroad.

There are several reasons why the *Triplett* analysis does not apply to this case. First, in *Triplett,* the lawmakers testified that the Akron ordinance was intended to reach "all public nudity in Akron, including theatrical performances and barroom dancing." *Id.* at 131. There is no such evidence in this case to date. Second, the *Triplett* court observed that the Akron ordinance was subject to an overbreadth challenge, whereas the Indiana statute in *Barnes* was not. This was because the Indiana statute had been given a limiting construction by the Indiana Supreme Court. *Id.* at 136 n. 3. In similar fashion, CHATTANOOGA CITY CODE § 25–85 has indeed been narrowly construed by the Tennessee Supreme Court. In *City of Chattanooga v. McCoy,* 645 S.W.2d 400 (Tenn.1983), the Tennessee Supreme Court said:

The obvious thrust of the Chattanooga ordinance is to outlaw nudity and indecent sexual conduct in public without any express or implied intent to suppress or prohibit any legitimate speech or expression entitled to First Amendment protection. *Id.* at 403. The Tennessee Supreme Court went on to conclude that § 25–85 is not constitutionally overbroad. Thus, it is clear that § 25–85 as construed by the Tennessee Supreme Court does not attempt to regulate nudity in performances which have serious literary, artistic or political value. It is also noteworthy that at one time the ordinance did include within the definition of a "public place" the terms "theaters" and "auditoriums." After an adverse decision by the Tennessee Court of Appeals in 1978, the City removed this terminology from the ordinance. Therefore, despite the Sixth Circuit's *Triplett* decision, it is clear that § 25–85 is not overbroad.

Plaintiffs argue that the challenged city ordinances are pre-empted by the passage of Chapter 542 of the Public Acts of Tennessee 1994 (codified at TENN.CODE ANN. § 39–13–511 (1994)). Plaintiffs base their argument on two cases from the Supreme Court of Tennessee, *Capitol News Co. v. Metropolitan Government of Nashville,* 562 S.W.2d 430 (Tenn.1978), and *City of Bartlett v. Hoover,* 571 S.W.2d 291 (Tenn.1978). Both of these cases are distinguishable on their facts. *Capitol News* involved a conflict between the state obscenity statute, TENN.CODE ANN. § 39–1012, and a local ordinance. *Hoover* involved a conflict between the state gambling statute, TENN.CODE ANN. §§ 6–202, 39–2033(2), 39–2033(4), and a local ordinance. Both cases cite *Southern Ry. v. City of Knoxville,* 223 Tenn. (1 Pack) 90, 442 S.W.2d 619 (1968), for the basic proposition that "[t]he mere fact that the state, in the exercise of the police power, has made certain regulations does not ... prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two ... both will stand...." *Id.,* 442 S.W.2d at 622. In *Capitol News,* the Tennessee Supreme Court found no conflict between the state statute and the local ordinance, *Capitol News,* 562 S.W.2d at 434–35,

while in *Hoover* the Court did find a conflict, *Hoover*, 571 S.W.2d at 293. The local ordinance in *Capitol News* was allowed to stand, while the ordinance in *Hoover* was found to be pre-empted. It is thus clear that conflict with the law of the state is the key point in an analysis of whether a local ordinance is pre-empted by state law in Tennessee. While TENN.CODE ANN. § 39–13–511 and CHATTANOOGA CITY CODE § 25–85 define "public place" somewhat differently, this does not amount to such a conflict as would nullify the local ordinance. As applied to nude dancing there is no appreciable difference between § 25–85 and the state statute. This is especially so because the Tennessee Supreme Court has narrowly construed the ordinance. As argued by the defendants, and as pointed out in *Capitol News*, 562 S.W.2d at 434–35, the state legislature is capable of declaring its intentions that a particular statute should pre-empt local ordinances. Such a statement of intent is notably absent in TENN.CODE ANN. § 39–13–511.

In sum, there is no reason why the result of plaintiffs' legal challenge to CHATTANOOGA CITY CODE § 25–85 should be any different from the result reached on the Indiana public indecency statute by the United States Supreme Court in *Barnes*. It is not pre-empted by state legislation. As to this particular ordinance, therefore, it is not likely that plaintiffs' legal claim will succeed on the merits.

■ The other ordinance involved here, CHATTANOOGA CITY CODE § 11–435(c), presents a different picture. This provision, which is a part of Chattanooga' adult-oriented establishment ordinance, reads as follows:

> No operator, entertainer, employee, or customer shall be unclothed or in such attire, costume, or clothing so as to expose to view any portion of the sex organs, breasts or buttocks of said operator, entertainer, or employee with the intent to arouse or gratify the sexual desires of the operator, entertainer, employee, or customer.

It will be noted that this ordinance does not strictly prohibit nude dancing—or even public nudity. To violate this ordinance one has to either dress, or undress, in such a way within an adult-oriented establishment as to evince an intent to arouse one's own sexual desires or those of someone else. The meaning and significance of this provision is somewhat Delphic. This ordinance does not provide fair notice of what is proscribed to those who must obey it, and is therefore void for vagueness. *See Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1104–05 (6th Cir.1995).

Moreover, this ordinance does not purport to prohibit conduct which is only public. It could be construed to prohibit privately conducted attempted masturbation at an adult-oriented establishment. Thus, it is likely that this provision would be found to be overbroad as not having been tailored to address secondary effects associated with publicly-conducted nude dancing. Another district court has held that a nearly identical ordinance provision flunks the *O'Brien* test. *Ellwest Stereo Theater, Inc. v. Boner*, 718 F.Supp. 1553, 1579–80 (M.D.Tenn.1989).

### *The Remaining Preliminary Injunction Factors*

#### *A.  CHATTANOOGA CITY CODE § 25–85*

■ Since this Court has preliminarily determined that CHATTANOOGA CITY CODE § 25–85 is not facially unconstitutional, the plaintiffs cannot show that they would suffer irreparable harm by its enforcement. If plaintiffs' First Amendment rights were violated here, irreparable harm would occur. However, the Court has determined that this is not likely to be the case. Finally, the public is served by the enforcement of valid laws. Since this Court has preliminarily determined that the law is valid, the public interest is served by denial of the preliminary injunction as to § 25–85.

#### *B.  CHATTANOOGA CITY CODE § 11–435(c)*

■ One suffers injury when one's First Amendment rights are violated. *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir.1989). Granting a preliminary injunction would not harm others in this instance. If the harm is the secondary effects of nude dancing, the City may counter those with the enforcement of CHATTANOOGA CITY CODE § 25–85. Finally, the public interest will be served by prevent-

ing further litigation over an ordinance which is unclear in its meaning and scope.

It should be emphasized that this Court has not decided, nor is it the role of this Court to decide, whether nude dancing is good or bad. That decision rests with the Chattanooga City Council. This Court has only decided that under the law as it exists today, the plaintiffs are not likely to succeed on their claim that the City cannot, if it wishes, prohibit nude dancing.

An order will enter.

### ORDER

For the reasons expressed in the Court's memorandum filed herewith, plaintiffs' motion for a preliminary injunction (Court File No. 2) is **DENIED** insofar as it seeks to enjoin enforcement of CHATTANOOGA CITY CODE § 25–85. Plaintiffs' motion is **GRANTED** as to CHATTANOOGA CITY CODE § 11–435(c) and the defendants are hereby **ENJOINED** from enforcing that ordinance provision.

SO ORDERED.