IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

## STATE OF TENNESSEE v. DEMARCUS JAMEL LOVE

**Appeal from the Circuit Court for Rutherford County**
No. F-81465A        Royce Taylor, Judge
_____

**No. M2019-01778-CCA-R3-CD**
_____

Defendant, Demarcus J. Love, was indicted by a Rutherford County Grand Jury for six counts of criminal simulation, one count of simple possession of marijuana, one count of possession of drug paraphernalia, and one count of driving on a cancelled, suspended, or revoked license. Defendant filed a motion to suppress in which he argued that the officer did not have probable cause to stop him after he made a U-turn. After a hearing on the motion, the trial court granted Defendant's motion. The State appeals the ruling of the trial court. After a thorough review of the record, we conclude that the officer had probable cause to stop Defendant. We reverse the judgment of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT H. MONTGOMERY, JR., J.J., joined.

John D. Drake, Murfreesboro, Tennessee, for the appellee, Demarcus Jamel Love.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Allyson Abbott, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

*Facts and Procedural History*

On January 11, 2019, Defendant was driving on Murfreesboro Road in LaVergne. LaVergne Police Officer Justin Darby observed Defendant make a U-turn in violation of

LaVergne Municipal Code Section 15-405. Officer Darby initiated a traffic stop by following Defendant and turning on his blue lights. Officer Darby had a cold so when he approached the vehicle, he thought he smelled marijuana but was unsure because he was congested. Officer Darby asked Defendant for permission to search the vehicle, and Defendant denied permission. Officer Darby deployed his canine to "conduct a free-air sniff" around the vehicle. The canine indicated a positive alert at the front passenger door. Officer Darby searched the vehicle, marijuana was located inside the vehicle, and Defendant was arrested.

Defendant was indicted by a Rutherford County Grand Jury for six counts of criminal simulation, one count of simple possession, one count of possession of drug paraphernalia, and one count of driving on a cancelled, suspended, or revoked license. Defendant filed a motion to suppress. In support of his motion, Defendant argued that Officer Darby did not have probable cause to stop him because the municipal code provision he violated was unenforceable because the city failed to post signs that prohibited U-turns. Defendant maintained that he was not on notice that U-turns were prohibited. The State argued that according to Tennessee Code Annotated Section 55-10-307(a), municipalities "may by ordinance provide additional regulations for the operation of vehicles within the municipality." Further, the State maintained that a state statute provides that "local authorities may cause markers, buttons, or signs to be placed" in order to alert drivers of traffic regulations. T.C.A. 55-8-140(4). At this intersection, the State argued that LaVergne opted to regulate U-turns by ordinance.

The trial court granted Defendant's motion to suppress. The trial court found that LaVergne Municipal Code Section 15-405 prohibits U-turns. The Tennessee Department of Transportation ("TDOT") Traffic Design Manual[1] requires cities to post appropriate signage that indicates the prohibition of U-turns. The trial court found that although there were signs at other intersections in LaVergne that prohibited U-turns, there was no signage where Defendant made a U-turn. The trial court stated in part:

> Tennessee Code Annotated [Section] 54-16-108(a)(2) even provides that it is unlawful for any person to make a left turn or a semicircular or U-turn except through an opening provided for that purpose to make a U-turn if there is an opening provided for that purpose in the dividing curb, section, separation, or line (the central reservation). Unless otherwise posted, any driver would reasonably believe it is legal to make a U-turn in a paved area in the middle of the median which appears to be designed for that purpose. In this case, the roadway in question is a U.S. highway (U.S. 41), a State of Tennessee highway (T.N. 70), and a municipal road

---

[1] The design manual is not in the record.

(Murfreesboro Road). The paved area in the central reservation appeared from photos (Exhibit 2) to be designed for the purpose of pulling out of traffic (from the travel lanes) to make a left turn or a U-turn, and that any driver would reasonably believe it was legal and appropriate to conduct such maneuver.

Such U-turns are necessary for drivers to access businesses and residences on the opposite side of a divided highway and are routinely performed on a daily basis.

This [c]ourt concludes that because the area appears to be designed for turns (including U-turns) and there was no posted prohibition against such turns, there was no reasonable suspicion to stop [Defendant]. Accordingly, the subsequent search of the vehicle and the evidence obtained as a result of the search must be suppressed.

The trial court found that Officer Darby's traffic stop of Defendant's vehicle was not based upon reasonable suspicion. It is from the granting of Defendant's motion that the State now appeals.

*Analysis*

The State argues that the trial court erred in granting the motion to suppress because Officer Darby had probable cause to initiate a traffic stop. Defendant argues that the trial court was correct in granting the motion to suppress. We agree with the State.

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is afforded "the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). Questions concerning the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. However, our review of the trial court's application of the law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee protection from unreasonable searches and seizures. *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006). "However, neither the

Fourth Amendment nor Article I, section 7 limit all contact between police and citizens." *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). There are three categories of police-citizen interaction: (1) a full-scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification. *Id*. "While arrests and investigatory stops are seizures implicating constitutional protections, consensual encounters are not." *Nicholson*, 188 S.W.3d at 656. The State bears the burden of proving that a warrantless action was justified as a lawful investigatory stop or under some other exception to the warrant requirement. *Id*. at 656-657. We apply the totality of the circumstances analysis and the standard of whether a reasonable person would believe that he was not free to leave. *Id*. at 658.

"One exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997)). The moment that a police officer turns on the blue lights of his patrol vehicle, the "police officer has clearly initiated a stop and has seized the subject of the stop." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). In cases involving a seizure when a police officer pulls over a vehicle, the police officer must have reasonable suspicion of criminal activity, supported by specific and articulable facts, *at the time that the police officer turns on the blue lights*. *Id.* "Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity . . . , and it is determined by considering the totality of the circumstances surrounding the stop . . . ." *Id.* (internal citations omitted). A violation of an ordinance or municipal code provides officers with the authority to seize an individual. *See State v. Christopher Demotto Linsey*, No. M2002-01299-CCA-R3-CD, 2004 WL 840080 at *3, (Tenn. Crim. App. Apr. 16, 2004), ("The Defendant failed to abide by the Clarksville ordinance when he made a right turn without activating his turn signal. Therefore, the police officers had probable cause to believe that he had violated the municipal ordinance, and their stop of the Defendant was constitutional."), *no perm. app. filed*.

We note the general rule that municipal ordinances that conflict with State law are invalid. *See Southern Ry. Co. v. Knoxville*, 442 S.W.2d 619, 621 (Tenn. 1968). However, where, as here, a municipality adds additional requirements, which do not conflict with the State law, the municipal ordinance will stand. *See id.* at 622.

In this case, Defendant was clearly seized when Officer Darby stopped Defendant's vehicle. *See Binette*, 33 S.W.3d at 218. Consequently, we must determine whether Officer Darby had reasonable suspicion that a traffic violation had occurred at the time he initiated the stop. *See id.*

Here, the state statute governing the rules of the road generally prohibits U-turns except under certain circumstances. *See* T.C.A. § 54-16-108(a)(2) (Rules of the road). However, municipalities "may" regulate the operation of vehicles at intersections by using markers, buttons, or signs. T.C.A. § 55-8-140(4). An intersection is defined as

(A)The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two (2) highways that join one another at, or approximately at, right angles, or the areas within which vehicles traveling upon different highways joining at any other angle may come in conflict; or

(B) Where a highway includes two (2) roadways thirty feet (30′) or more apart, then every crossing of each roadway of that divided highway by an intersecting highway shall be regarded as a separate intersection. In the event the intersecting highway also includes two (2) roadways thirty feet (30′) or more apart, then every crossing of two (2) roadways of such highways shall be regarded as a separate intersection;

T.C.A. 55-8-101(32). Municipalities "may by ordinance provide additional regulations for the operation of vehicles within the municipality" which shall not be in conflict with Chapter 8 of Title 55. T.C.A. § 55-10-307(a). The City of LaVergne chose to enact an ordinance that prohibited U-turns to regulate the operation of vehicles pursuant to the authority prescribed in Tennessee Code Annotated Section 55-10-307(a), which gives municipalities the ability to enact additional requirements. The trial court's reliance on the language of Tennessee Code Annotated Section 54-16-108(a) that generally prohibits U-turns in Tennessee must be aligned with Tennessee Code Annotated Section 55-10-307(a). Further the break in the highway in question is not an intersection as defined by Tennessee Code Annotated Section 55-8-101(32).[2] Tennessee Code Annotated Section 55-8-140 only applies to turns at intersections and its application to this case is misconstrued.

Defendant was prohibited from making a U-turn by municipal ordinance. No statute requires the placement of signage that prohibits U-turns at breaks in the median. Accordingly, the ordinance was not in conflict with state law and was enforceable. Defendant's lack of awareness of such a municipal ordinance prohibiting a U-turn at this

---

[2] It is clear from the evidence, specifically photo exhibit 2, that this break is not two highways intersecting one another.

particular location is of no consequence. This is simply a case of Defendant committing a traffic violation which resulted in a constitutional stop based on the officer's reasonable suspicion that a traffic violation had occurred. *See State v. Vineyard*, 958 S.W.2d 730 (1997).

*Conclusion*

After our review, we conclude that the trial court erred in granting the motion to suppress. As a result, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
TIMOTHY L. EASTER, JUDGE