IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 5, 2004 Session

## ARTHUR M. BOHANAN v. CITY OF KNOXVILLE

**Appeal from the Chancery Court for Knox County**
**No. 149962-3    Daryl R. Fansler, Chancellor**

_____

**No. E2003-01306-SC-R3-CV - Filed June 16, 2004**
_____

The employee, a retired police officer, filed suit seeking workers' compensation benefits.  He alleged that his job duties caused him to develop hypertension resulting in permanent partial disability.  The employee relies on the statutory presumption of causation for law enforcement officers found in Tennessee Code Annotated section 7-51-201(a)(1), and concedes that if the employer has rebutted the presumption, there is insufficient evidence establishing a causal relationship between his hypertension and his employment.  Following a thorough review of the record and applicable legal principles, we conclude that the City of Knoxville has rebutted the statutory presumption of causation, and we therefore reverse the judgment of the trial court.

**Tenn. Code Ann. § 50-6-225(e)(1); Judgment of the Chancery Court for Knox County Reversed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ. joined.

John T. Batson, Jr. and Hanson R. Tipton, Knoxville, Tennessee, for the appellant, City of Knoxville.

J. Anthony Farmer, Knoxville, Tennessee, for the appellee, Arthur M. Bohanan.

### OPINION

### Background

The appellee, Arthur M. Bohanan ("employee"), was fifty-eight years of age at the time of trial and had recently retired from his employment as a police officer with the City of Knoxville ("employer").  The employee worked in the Knoxville Police Department patrol division for less than a year, in the crime lab for twenty-four years, and finally in the Child Pornography Unit ("CPU") for approximately two years.  His previous employment experience included classifying

1

fingerprints for the FBI, serving in the military police for the United States Army, and conducting investigations for Equifax and the Jefferson County Sheriff's Department.

After being employed in the CPU for approximately fourteen to sixteen months, the employee began experiencing symptoms such as insomnia, waking up with cold sweats, blurred vision, dizziness, tightness in his chest, and weight gain. He alleges that the stress of working in the CPU caused his symptoms. In early December of 2000, he requested a transfer out of the CPU but was denied. On January 20, 2001, his symptoms became so severe that his son drove him to the emergency room, where he was advised that he had extremely high blood pressure. Following the emergency room visit, the plaintiff's primary care physician placed him on two medications to control his blood pressure. The plaintiff testified that he was continuing to take antihypertensive medications and no longer was experiencing symptoms related to high blood pressure.

The plaintiff retired from the Knoxville Police Department effective May 31, 2001, but has since maintained several other jobs. He has continued consulting work which he had started under the name Bohanan's Forensics; he has been teaching forensics classes; and he has been performing work for the Federal Disaster Mortuary and Operational Response Team ("DMORT"). As a member of DMORT, he went to New York three times after the September 11, 2001 attacks to identify and tag body parts, working approximately thirteen-hour shifts. He experienced no blood pressure problems while working at Ground Zero.

On February 9, 2001, the employee filed a workers' compensation claim, alleging that, under Tennessee Code Annotated section 7-51-201(a)(1), because he was a law enforcement officer, it is presumed that his health impairment caused by hypertension is due to an accidental injury suffered in the course of employment and is therefore compensable.[1] Three medical experts testified by deposition: Dr. William Cloud, Dr. Stephen Dill, and Dr. Hal Roseman.

Dr. Cloud, the Medical Director of Employee Health Services for the employer, testified that his office maintains medical records on city employees. He has examined the employee on a number of occasions. He testified that the employee's first blood pressure reading, taken on April 10, 1986, after he was hired by the employer, was 120/80. The defendant's blood pressure was 130/88 on April 12, 2000. Dr. Cloud testified that both of these readings were within the

---

[1]    Tennessee Code Annotated section 7-51-201(a)(1) provides that:

Whenever the state of Tennessee, or any municipal corporation or other political subdivision thereof that maintains a regular law enforcement department manned by regular and full-time employees and has established or hereafter establishes any form of compensation to be paid to such law enforcement officers for any condition or impairment of health which shall result in loss of life or personal injury in the line of duty or course of employment, there shall be and there is hereby established a presumption that any impairment of health of such law enforcement officers caused by hypertension or heart disease resulting in hospitalization, medical treatment or any disability, shall be presumed (unless the contrary is shown by competent medical evidence) to have occurred or to be due to accidental injury suffered in the course of employment.

normal range.  Subsequently, on January 22, 2001, the defendant's blood pressure was 155/98, and on January 30, 2001, his blood pressure was 155/100.  Dr. Cloud testified that neither of these readings were within the normal range, even though the employee was taking antihypertensive medication, and that he diagnosed the defendant as having hypertension.  On April 10, 2001, according to Dr. Cloud, the employee's blood pressure was 132/80, which is within the normal range.

Dr. Dill, a board certified cardiologist, testified that he evaluated the employee on August 26, 2002, at the request of the employee's counsel.  Dr. Dill testified that the employee has Class I essential hypertension and that, although he cannot identify a specific causal relationship, he believes the employee's vocational stress exacerbated his hypertension.  He testified that the employee has not had any damage to his vital organs as a result of his hypertension.  Dr. Dill opined that the employee has a six to nine percent impairment rating and no restrictions.

Dr. Roseman, also a board certified cardiologist, testified that he evaluated the employee on December 12, 2001, at the request of the employer's counsel.  Dr. Roseman testified that the employee told him that he began to feel "yucky" in June and July of 2000 while employed in the CPU and that his symptoms intensified in October or November of 2000, before culminating in his emergency room visit on January 20, 2001.  Dr. Roseman testified that the employee has had diastolic hypertension since approximately 1988 and mild hyperlipidemia[2] since 1993.  He testified that the employee's increasing weight since 1983, from 190 pounds to 232 pounds, most likely caused his elevation in blood pressure and opined within a reasonable degree of medical certainty that the employee's work in the CPU was not related to his hypertension.  Moreover, Dr. Roseman testified that the employee may have metabolic syndrome,[3] which could explain his hypertension.  Dr. Roseman testified that, because the employee's hypertension is easily controlled by minimal medication, the employee has no medical impairment and that he would place no restrictions upon the employee.

The trial court held that Dr. Roseman's testimony did not rebut the presumption found in Tennessee Code Annotated section 7-51-201(a)(1).  The trial court found for the employee and awarded eighteen percent permanent partial disability to the body as a whole.  The employer appealed.

---

[2]  Hyperlipidemia, also known as hyperlipemia, refers to "excessive amounts of fat and fatty substances in the blood."  The Random House Dictionary of the English Language 941 (Stuart Flexner ed., 2d ed. 1987).

[3]  The metabolic syndrome, also called the syndrome of insulin resistance, includes high triglyceride levels, a low HDL cholesterol level, high blood pressure, resistance to the effects of insulin, a high level of sugar (glucose) in the blood, and an increased tendency to form blood clots.  It also includes being overweight (particularly if fat accumulates in the abdomen).  All of these problems work together to increase the risk of coronary artery disease.

The Merck Manual of Medical Information 922 (Mark H. Beers ed., 2d ed. 2004).

**Standard of Review**

In workers' compensation cases, this Court reviews issues of fact de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1999); Jones v. Sterling Last Corp., 962 S.W.2d 469, 471 (Tenn. 1998). When expert testimony differs, it is within the discretion of the trial judge to determine which testimony to accept. Kellerman v. Food Lion, Inc., 929 S.W.2d 333, 335 (Tenn. 1996). "However, where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition, as it is in this case, then this Court may draw its own conclusions about the weight and credibility of that testimony, since we are in the same position as the trial judge." Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997).

**Analysis**

Tennessee Code Annotated section 7-51-201(a)(1) creates a rebuttable presumption "that any impairment of health of . . . law enforcement officers caused by hypertension or heart disease resulting in hospitalization, medical treatment or any disability, shall be presumed (unless the contrary is shown by competent medical evidence) to have occurred or to be due to accidental injury suffered in the course of employment." The statutory presumption applies if: 1) the employee was employed by a regular law enforcement department; 2) the employee suffered from hypertension or heart disease that necessitated hospitalization, medical treatment, or disability in the course of employment; and 3) prior to the injury the employee had been given a physical examination that did not reveal hypertension or heart disease. Tenn. Code Ann. § 7-51-201(a)(1) (1998); Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997) (citing Stone v. City of McMinnville, 896 S.W.2d 548, 550 (Tenn. 1995)).

To rebut the presumption of causation, "[t]here must be affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based." Coffey v. City of Knoxville, 866 S.W.2d 516, 519 (Tenn. Workers' Comp. Panel 1993). Once the presumption has been overcome, it disappears, and the employee must then prove causation by a preponderance of the evidence as in any other workers' compensation case. Krick, 945 S.W.2d at 713; Stone, 896 S.W.2d at 552.

The employer does not dispute that the employee met the three prerequisites for the statutory presumption to attach. Rather, the employer argues that the expert testimony of Dr. Roseman was sufficient to rebut the presumption and that the employee failed to establish causation once the presumption disappeared. The employee conceded at trial that he cannot prevail if the statutory presumption was overcome, but he argues that Dr. Roseman's testimony was insufficient to rebut the presumption.

Dr. Roseman testified that the employee's hypertension was not the result of his employment with the police department, but of multiple factors, including progressive weight

4

gain and a sedentary lifestyle. Dr. Roseman also testified that the employee has had hypertension since 1988 and mild hyperlipidemia since 1993 and that he may have metabolic syndrome, which would explain his hypertension. Dr. Roseman stated that "[i]t is my professional opinion, based upon a reasonable degree of medical certainty, that Mr. Bohanan's hypertension does not appear to be related to his profession as a police officer." This proof is "affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based." Coffey, 866 S.W.2d at 519. By presenting this competent medical evidence, the employer rebutted the presumption of causation found in Tennessee Code Annotated section 7-51-201(a)(1), and the burden shifted to the employee to prove causation.

## Conclusion

The employee concedes, and we agree, that he cannot prevail if the statutory presumption was overcome. Accordingly, because the employer presented medical evidence sufficient to overcome the statutory presumption of causation, and because the employee has failed to prove by a preponderance of the evidence that his hypertension was job-related, we reverse the judgment of the trial court.

Costs of this appeal are taxed against the appellee, Arthur M. Bohanan, and surety, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE

5