# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 13, 2012 Session

## GWENDOLYN JEFFREY v. CITY OF MEMPHIS

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-09-0760-2　　　Arnold B. Goldin, Chancellor

### No. W2012-00274-COA-R3-CV - Filed February 5, 2013

Decedent's spouse brought an action to recover HHL benefits for the death of her firefighter husband. The City of Memphis denied her claim and decedent's spouse appealed to an ALJ. The ALJ, likewise, denied the claim for benefits finding that the City of Memphis had rebutted the statutory presumption of causation and that decedent's spouse had then failed to prove, by a preponderance of the evidence, that decedent's cardiac condition was caused by his employment. The chancery court affirmed the decision of the ALJ, and we affirm the decision of the chancery court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Gerald S. Green, Memphis, Tennessee, for the appellant, Gwendolyn Jeffrey

John H. Dotson, Casey Shannon, Memphis, Tennessee, for the appellee, City of Memphis

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Wendell Jeffrey ("Decedent") was hired as a firefighter by the Memphis Fire Department in February 1986 at age twenty-seven. In 2003, Decedent's physician, Laurie Baker, M.D., referred Decedent to cardiologist David Stewart, M.D. Dr. Stewart diagnosed Decedent with cardiomyopathy, noting that his left ventricle showed "several generalized hyperkinesis" with an ejection fraction of twenty-two percent.[1]

On October 24, 2005, while sitting on the fire station couch, Decedent, then forty-seven years old, suffered from "seizure-like convulsions . . . . [and he] eventually went into full arrest." Decedent did not survive. An autopsy listed his cause of death as "cardiac arrhythmia due to hypertensive cardiovascular disease."

Decedent's widow, Gwendolyn Jeffrey filed a claim for death benefits[2] pursuant to the City of Memphis' "Heart, Hypertension, and Lung Program" ("HHL").[3] Under the HHL Program, as set forth in the City's "Policy and Administrative Procedures," firefighters who are "diagnosed with diseases of the heart, lungs, and hypertension are presumed (*unless the contrary is shown by competent medical evidence*) to have contracted such diseases or conditions in the course of their employment by the City of Memphis government." (emphasis added).

Following Mrs. Jeffrey's claim for HHL benefits, Decedent's medical records were presented to three physicians: Jack Hopkins, M.D., J.T. Davis, Jr., M.D., and G. Jose Guerra, M.D. In a letter dated January 5, 2006, Dr. Davis opined that Decedent's "[c]ardiac disease was related to + risk factors and *not related to employment factors*." (emphasis added). Dr. Davis noted a family history of hypertension, diabetes mellitus and stroke as well as Decedent's diagnoses of cardiomyopathy, hypertension, sleep apnea, and congestive heart failure.

---

[1]According to Dr. Jose Guerra, who testified by deposition in this case, an ejection fraction "[m]easures the ability of the heart to pump." He stated that Decedent's heart had "a very poor capacity to pump. Twenty-two percent is very low."

[2]Mrs. Jeffrey's claim is not included in the record.

[3]"The City has opted out of the Workers' Compensation Law and has established its own compensation procedures." *Pittman*, 360 S.W.3d at 387 n.2 (citing *Tidwell*, 193 S.W.3d at 557).

Dr. Guerra, in a January 16, 2006 letter, similarly opined that

After reviewing his records it appears to me that Mr. Jeffrey had congestive cardiomyopathy, etiology of which is undetermined, *but not related to his employment*. His death likely resulted from rhythm problem[s] related to his congestive cardiomyopathy.

In his December 21, 2005 letter, the third physician, Dr. Hopkins stated that "[t]he exact underlying etiology of dilated cardiomyopathy remains unknown in this and all such patients." However, he went on to state that "[w]hile [Decedent's] occupation was not likely the entire underlying etiology, it is very reasonable to believe that the physical and mental stresses of his occupation as a firefighter did help advance and complicate the course of his severe cardiac disease to which he succumbed in October, 2005."

Apparently based upon these medical opinions, the City denied Mrs. Jeffrey's claim for HHL benefits. Mrs. Jeffrey then appealed the denial to an administrative law judge.[4] Discovery ensued, and the depositions of Drs. Davis and Guerra were taken. Consistent with their prior letters, Drs. Davis and Guerra opined that the etiology of Decedent's cardiac problems was unrelated to his employment.

Following an administrative hearing, the ALJ entered his "Order on Findings of Fact and Conclusions of Law" on March 16, 2009, in which he affirmed the City's denial of Mrs. Jeffrey's claim for HHL benefits. The ALJ noted that the parties had stipulated that Mrs. Jeffrey was entitled to the statutory presumption set forth in Tennessee Code Annotated section 7-51-201 that Mr. Jeffrey's cardiac condition was caused by his employment. However, the ALJ found that the presumption had been rebutted by competent medical proof, and that Mrs. Jeffrey had "failed to provide competent medical testimony capable of proving that Decedent's cardiac condition arose out of and in the course and scope of his employment as a firefighter for the City of Memphis."[5] Thus, the ALJ concluded that there existed "no substantial causal connection between Decedent's cardiac condition and his employment."

On April 9, 2009, Mrs. Jeffrey filed a Petition for Writ of Certiorari in the Shelby

_____

[4]The City's Policy and Administrative Procedures provides that "[a]ny request for reconsideration of an . . . HHL claim for benefits shall be made in writing to the Appeals Coordinator within twenty (20) calendar days of the employee's receipt of written notice of denial regarding the matter being appealed."

[5]"To rebut the presumption of causation, '[t]here must be affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based.'" ***Bohanan v. City of Knoxville***, 136 S.W.3d 621, 625 (Tenn. 2004) (citing *Coffey v. City of Knoxville*, 866 S.W.2d 516, 519 (Tenn. Workers Comp. Panel 1993)).

County Chancery Court. Thereafter, she filed a "Motion to Allow Claimant to Obtain Additional Medical Proof" seeking to depose Dr. Hopkins. The chancery court granted Mrs. Jeffrey's motion, Dr. Hopkins' deposition was taken on January 19, 2010, and the case was referred back to the ALJ for reconsideration.

After consideration of Dr. Hopkins' deposition testimony, the ALJ issued a Modified Order of Judgment[6] in which it found that the testimony of Drs. Davis and Guerra had rebutted the statutory presumption of causation, and that Mrs. Jeffrey failed to prove the existence of "a substantial causal connection between [Decedent's] occupation as a firefighter and his coronary artery disease" or that "his occupation had a direct causal connection to his congestive cardiomyopathy and death."

Mrs. Jeffrey then filed a "Motion for Review of Final Order by the Administrative Law Judge" in the chancery court. A judicial review hearing was held, after which the chancery court entered an order in which it noted that "had it been the initial decision-maker, it would have ruled differently than [the ALJ] and reversed [the City's] denial of benefits." However, finding that the denial of benefits was not made upon unlawful procedure, that it was not arbitrary and capricious, and that it was not unsupported by evidence that is substantial and material in light of the record, the chancery court affirmed the ALJ's denial of Mrs. Jeffrey's claim for HHL benefits. Mrs. Jeffrey timely appealed to this Court.

## II. ISSUE PRESENTED

Appellant presents the following issue for review, as summarized:

1. Whether the chancery court erred in upholding the ALJ's decision to deny Mrs. Jeffrey HHL benefits when the ALJ acted arbitrarily or capriciously and when it failed to assign sufficient weight to both the statutory presumption of causation and the testimony of Dr. Hopkins.

For the following reasons, we affirm the decision of the chancery court.

---

[6]It appears that the Modified Order of Judgment is not included in the record on appeal. However, the substance of the order is recited in the chancery court's December 19, 2011 "Order Affirming Administrative Denial of Plaintiff's Appeal for Death Benefits."

### III. STANDARD OF REVIEW

"Review of the ALJ's determinations is pursuant to the Uniform Administrative Procedures Act ("UAPA"), and is governed by Tennessee Code Annotated section 4-5-322(h)[.]" ***Pittman v. City of Memphis***, 360 S.W.3d 382, 386 (Tenn. Ct. App. 2011) (citing *Tidwell v. City of Memphis*, 193 S.W.3d 555 (Tenn. 2006)). Pursuant to section 4-5-322(h),

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion or;
> (5)(A) Unsupported by the evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**Tenn. Code Ann. § 4-5-322(h)**. We, like the trial court, are confined to this scope of review. ***Pittman***, 360 S.W.3d at 387 (citing *CF Indus. v. Tenn. Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980)).

### IV. DISCUSSION

Tennessee Code Annotated section 7-51-201(b)(1) provides as follows:

> Whenever the State of Tennessee, or any municipal corporation or other political subdivision of the state maintains a regular fire department manned by regular and full-time employees and has established or hereafter establishes any form of compensation, other than workers' compensation, to be paid to such firefighters for any condition or impairment of health that results in loss of life or personal injury in the line of duty or course of employment, there shall be and there is hereby established a presumption that any impairment of health of such firefighters caused by disease of the lungs, hypertension or heart

disease resulting in hospitalization, medical treatment or disability, shall be presumed, unless the contrary is shown by competent medical evidence, to have occurred or to be due to accidental injury suffered in the course of employment. Any such condition or impairment of health which results in death shall be presumed, unless the contrary is shown by competent medical evidence, to be a loss of life in [the] line of duty, and to have been in the line and course of employment, and in the actual discharge of the duties of such firefighter's position, or the sustaining of personal injuries by external and violent means or by accident in the course of employment and in the line of duty. Such firefighter shall have successfully passed a physical examination prior to such claimed disability, or upon entering government employment, and such examination fails to reveal any evidence of the condition or disease of the lungs, hypertension or heart disease.

In this case, the parties apparently do not dispute that Mrs. Jeffrey is entitled to a rebuttable presumption that her husband's cardiac condition occurred because of, or was due to, his employment with the Memphis Fire Department.[7] This appeal focuses on whether the City successfully rebutted the presumption by competent medical evidence–Mrs. Jeffrey claims that it did not–and if so, whether Mrs. Jeffrey demonstrated, by a preponderance of the evidence, that Decedent's occupation caused his cardiac condition.[8] *See Bohanan v. City of Knoxville*, 136 S.W.3d 621, 625 (Tenn. 2004) ("Once the presumption has been overcome, it disappears, and the employee must then prove causation by a preponderance of the evidence as in any other workers' compensation case.") (citations omitted).

In her brief to this Court,[9] Mrs. Jeffrey contends that "the decision makers below failed to assign sufficient weight to the statutory presumption[,]" and at oral argument before this Court she essentially argued that the medical proof in the case was balanced, and therefore, that the statutory presumption should have tipped the balance in her favor. We

[7]As stated above, the ALJ noted in his initial order that "[t]he parties stipulated that Claimant, Gwe[n]dolyn Jeffrey, as surviving spouse of Decedent, Wendell Jeffrey, was entitled to the statutory presumption as set forth in T.C.A. section 7-51-201."

[8]In her appellate brief, Mrs. Jeffrey argues, without further elaboration or citation to the record, that "[the City] determined that her deceased husband's medical condition was caused by his occupation when it admitted him into the HHL Program." However, there is no indication that HHL benefits were sought prior to Decedent's death when they were denied by the City. This issue is without merit.

[9]We note that Mrs. Jeffrey's appellate brief does not contain a single citation to the record as required by Tennessee Rule of Appellate Procedure 27.

need not decide whether her theory is correct because we simply cannot agree with her characterization of the medical proof as equally balanced.

In their letters, both Dr. Guerra and Dr. Davis opined that Decedent's cardiomyopathy was unrelated to his employment. Again, in his deposition, Dr. Davis stated that Decedent's occupation was not the cause of his cardiac problems. Dr. Davis explained that hypertension (high blood pressure) is the most common cause of cardiomyopathy, and he blamed Decedent's cardiomyopathy upon his "severe hypertension" which was caused by both his risk factors–gender, race, and his family history of hypertension–and his pathologic factors–obesity, sleep apnea, and his failure to take his hypertensive medication as prescribed. Dr. Davis stated that Decedent's arrhythmia was "probably due to his structural heart disease[,]" but he conceded that "it could have been exacerbated or tripped off" by the stress of responding to two fire calls earlier that day. He likewise acknowledged that the physical and mental stress of Decedent's occupation could have advanced or complicated the course of his severe cardiac disease. Ultimately, though, he concluded that Decedent's "cardiac response was due to his severe hypertension" brought on by his risk and pathologic factors.

In his deposition, Dr. Guerra stated that, like most cases of cardiomyopathy, the etiology of Decedent's cardiomyopathy could not be determined. However, he ruled out Decedent's employment as a cause. He noted Decedent's heart's "very poor capacity to pump" as measured by his "ejection fraction," the potential for his sleep apnea to compound an existing heart issue, and that Decedent was overweight or obese. Dr. Guerra disagreed that occupational stress could have contributed to Decedent's sudden death, and he stated that even if Decedent had not responded to fire calls earlier that day, that "he could have died anyway" as "people with dilated cardiomyopathy die suddenly, no matter what they are doing." He concluded that Decedent's death was not stress related, "He died from his own disease, his cardiomyopathy."

Again, at oral argument, Mrs. Jeffrey essentially argued that Dr. Hopkins' deposition testimony counterbalanced that of Drs. Davis and Guerra. However, with regard to Dr. Hopkins, her appellate brief, without citation to the record, states only that "Dr. Hopkins found there to be a causal connection between Mr. Jeffrey's occupation and his death and that "Dr. Hopkins testified that the physical and mental stress of Mr. Jeffrey's occupation 'contributed to the progression of his cardiomyopathy, and that, in turn, was the substrate for his sudden cardiac death.'"[10] In response, the City correctly points out that Dr. Hopkins was

_____

[10]In her appellate brief, Mrs. Jeffrey twice notes that the ALJ's Modified Order of Judgment did not reference the testimony of Dr. Hopkins. Assuming this alleged omission is any way relevant, the Modified

(continued...)

unable to identify either the cause of Decedent's cardiomyopathy or the cause of his death. Dr. Hopkins testified, as a general proposition, that stress can cause or aggravate cardiomyopathy, but he acknowledged that he had no independent and specific knowledge of Decedent's stress exposure. Similarly, he testified that repeated exposure to smoke, chemicals, burning acids and ash "could be expected to be deleterious to [a person's] cardiac condition[,]" but he later conceded that he was only making a "general statement" and that he did not know whether Decedent ever inhaled any smoke.

Again, "[t]o rebut the presumption of causation, '[t]here must be affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based.'" *Bohanan*, 136 S.W.3d at 625 (citing *Coffey v. City of Knoxville*, 866 S.W.2d 516, 519 (Tenn. Workers Comp. Panel 1993)). In his Modified Order of Judgment, the ALJ found that the deposition testimony of Drs. Davis and Guerra "provided competent medical proof that [Decedent's] congestive cardiomyopathy and death were not caused by his occupation as a firefighter," and therefore, that the City had successfully rebutted the statutory presumption of causation. It then concluded, with the presumption dissolved, that Mrs. Jeffrey had failed to prove a substantial causal connection between Decedent's employment and his cardiomyopathy and death. The chancery court affirmed the ALJ's decision, finding that it was not made upon unlawful procedure, that it was not arbitrary and capricious, and that it was supported by substantial and material evidence.

Based upon the foregoing, it is clear that the City provided competent medical proof that Decedent's cardiomyopathy and death was not caused by his occupation as a firefighter. Both Dr. Davis and Dr. Guerra testified by deposition that the etiology of Decedent's cardiac problems was unrelated to his employment. Moreover, Dr. Davis identified risk and pathologic factors which he claimed caused Decedent's hypertension and cardiomyopathy, and Dr. Guerra disagreed that Decedent's sudden death was stress related. Accordingly, we cannot say that the ALJ's determinations–that the City carried its burden of rebutting the statutory presumption of causation and that Mrs. Jeffrey failed to then prove causation by a preponderance of the evidence–are not supported by substantial and material evidence or that they are arbitrary and capricious. The decision of the chancery court is affirmed.

---

[10](...continued)
Order of Judgment is not included in the record before us. It is the duty of the appellant to prepare a complete and accurate record on appeal. **Tenn. R. App. P. 24(b)**. Thus, any omitted reference error is waived.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Gwendolyn Jeffrey, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.