FILED
01/31/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2019 Session

## PAMELA PRYOR v. CITY OF MEMPHIS

**Appeal from the Chancery Court for Shelby County**
**No. CH-17-1493-2   Jim Kyle, Chancellor**

_____

### No. W2018-01353-COA-R3-CV
_____

This appeal involves Appellant City of Memphis' ("the City") decision to deny Appellee Pamela Pryor's application for On-the-Job-Injury ("OJI") benefits arising from the death of her husband while he was employed as a firefighter.  On appeal, the Administrative Law Judge ("ALJ") upheld the City's denial of the OJI claim citing the absence of an autopsy report as required by the City's OJI policy.  On review, the trial court reversed the ALJ's decision on its finding that the City's OJI Policy PM 74-02(3), which required claimant to procure an autopsy, conflicted with the statutory presumption given firefighters in Tennessee Code Annotated section 7-51-201, and remanded the case to the ALJ to conduct a new hearing on the merits.  Discerning no error, we affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Van D. Turner, Jr., Memphis, Tennessee, for the appellant, City of Memphis.

Kevin A. Snider, Joshua B. Bradley, Germantown, Tennessee, for the appellee, Pamela Pryor.

# OPINION

## I. Background

Appellee Pamela Pryor is the widow of former Memphis Firefighter, Lieutenant Terrance Pryor. Lieutenant Pryor died on May 25, 2015, while employed by Appellant City of Memphis ("the City"). At the time of his death, Lieutenant Pryor had been employed by the City since October 9, 1995. At the time of hire, Lieutenant Pryor underwent a physical examination that did not reveal signs of hypertension or heart disease. On May 24, 2015, at 7:00 a.m., Lieutenant Pryor began a 24-hour shift, which concluded at 7:00 a.m. on May 25, 2015. During his 24-hour shift, Lieutenant Pryor responded to five fire calls as a battalion chief. His duties as a battalion chief did not include physical firefighting; he managed the calls from a command post vehicle. Lieutenant Pryor arrived home around 8:00 a.m. on May 25, 2015 and died later that day, at approximately 5:45 p.m. The death certificate notes that Lieutenant Pryor was hypertensive and states that the cause of death was "complications of obesity."

On or about June 9, 2015, Ms. Pryor submitted an On-the-Job-Injury ("OJI") claim for death benefits. By letter of August 28, 2015, the City, through its third-party administrator, Sedgwick Claims Management Services, denied Ms. Pryor's claim. As set out in the denial letter, OJI Policy PM 74-02(3) states that, "No death claim will be considered without an autopsy report." It is undisputed that no autopsy was performed on Lieutenant Pryor. On or about September 29, 2015, Ms. Pryor filed an appeal. On August 16, 2017, Administrative Law Judge ("ALJ") George Brown conducted an administrative hearing, and, by order of September 13, 2017, denied Ms. Pryor's OJI claim because, *inter alia*, an autopsy was never performed as required under OJI Policy PM 74-02(3).

On October 12, 2017, Ms. Pryor filed a petition for judicial review in the Shelby County Chancery Court ("trial court"). On May 23, 2018, the City filed a response, and the appeal was heard on May 24, 2018. On June 25, 2018, the trial court entered an order voiding the City's OJI Policy PM 74-02(3) on its finding that the policy, which requires an autopsy for payment of OJI benefits, was in direct conflict with Tennessee Code Annotated section 7-51-201 ("the Statute"), which provides a presumption that the death of a firefighter caused by hypertension or heart disease occurred in the line of duty and in the course of employment. The trial court remanded the case to the ALJ for a new hearing on the merits with specific instructions that there be no proof concerning the City's OJI Policy PM 74-02(3) and that said policy should not influence the proceedings in any way. The City appeals.

## II. Issues

The City raises two issues on appeal, which we restate as follows:

1. Whether the trial court erred when it found that OJI Policy PM 74-02(3) is in conflict with the Statute and is, therefore, null and void.

2. Whether the trial court erred when it remanded the case to the ALJ for a new hearing on the merits.

In the posture of Appellee, Ms. Pryor asserts that the trial court correctly found that OJI Policy PM 74-02(3) is in conflict with the Statute; however, she, too, asserts that the trial court erred in remanding the case to the ALJ for rehearing. Based on her contention that the trial court could have reviewed the ALJ's substantive holdings, Ms. Pryor raises the following additional issues:

1. Whether Ms. Pryor met the prerequisites of the Statute, thereby establishing a *prima facie* case under the presumption and shifting the burden of proof to the City.

2. Whether the City successfully rebutted the presumption by affirmatively showing by competent medical evidence, that there was not a substantial causal connection between Lieutenant Pryor's work as a firefighter and the condition or impairment that resulted in his death.

3. In the alternative, if the City successfully rebutted the presumption, whether Ms. Pryor proved causation by a preponderance of the evidence.

### III. Standard of Review

Like the trial court, our review of the ALJ's decision is governed by the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 27-9-114 (a)(1); *Pittman v. City of Memphis*, 360 S.W.3d 382, 386 (Tenn. Ct. App. 2011); *City of Memphis v. Civil Serv. Comm'n of Memphis*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007). The UAPA provides, in pertinent part:

(a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. . . .

***

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

- 3 -

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

(i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322. In *City of Memphis*, this Court explained that

[u]pon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)); *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt*, 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Likewise, Tennessee Code Annotated [s]ection 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis*, 216 S.W.3d at 315. Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at 316. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone*, 876 S.W.2d at 110-11).

*City of Memphis*, 238 S.W.3d at 243.

## IV. Analysis

The City argues that the trial court erred in finding that OJI Policy PM 74-02(3) conflicts with the Statute. OJI Policy PM 74-02(3) provides:

3. Death Benefits

The legal dependents of any City of Memphis employee who is killed in the line of duty, whereas death is shown **not** to have resulted from the negligence of the employee or the employee's intentional violation of applicable local, state or federal regulations or laws, will be paid in the amount of One Hundred Thousand Dollars ($100,000.00).[1] In addition to

---

[1] At the ALJ hearing, the parties stipulated that this amount was amended to three-

the death benefits as provided for in PM-42-04. Authorization for such death benefits and the method of payment shall be determined following an investigation by the [Third Party Administrator] and recommendations from the Health and Safety Office to the City Attorney. No death claim will be considered without an autopsy report.

(Emphasis in original). The Statute provides that

[w]henever the state of Tennessee, or any municipal corporation or other political subdivision of the state maintains a regular fire department manned by regular and full-time employees and has established or hereafter establishes any form of compensation, other than workers' compensation, to be paid to such firefighters for any condition or impairment of health that results in loss of life or personal injury in the line of duty or course of employment, **there shall be and there is hereby established a presumption that any impairment of health of such firefighters caused by disease of the lungs, hypertension or heart disease resulting in hospitalization, medical treatment or any disability, shall be presumed, unless the contrary is shown by competent medical evidence, to have occurred or to be due to accidental injury suffered in the course of employment. Any such condition or impairment of health which results in death shall be presumed, unless the contrary is shown by competent medical evidence, to be a loss of life in line of duty**, and to have been in the line and course of employment, and in the actual discharge of the duties of such firefighter's position, or the sustaining of personal injuries by external and violent means or by accident in the course of employment and in the line of duty. Such firefighter shall have successfully passed a physical examination prior to such claimed disability, or upon entering upon governmental employment, and such examination fails to reveal any evidence of the condition or disease of the lungs, hypertension or heart disease.

Tenn. Code Ann. § 7-51-201(b)(1) (emphasis added). The Statute further provides that the Tennessee Legislature intended that "this section . . . be remedial in character and . . . permit[s] and require[s] any municipal corporation maintaining any permanent fire department to be covered by its provisions." Tenn. Code Ann. § 7-51-201(b)(2). Therefore, in administration of its OJI benefits, the City of Memphis Fire Department is governed by the Statute.

The City interprets the statute to require that "a baseline cause of death must first be established before either the claimant or the City can proceed to the [s]ection 7-51-

---

hundred and fifty thousand dollars ($350,000.00).

201(b)(1) [burden shifting] analysis." The City argues that its OJI Policy PM 74-02(3) autopsy requirement is necessary because an autopsy will establish the cause of death. Conversely, Ms. Pryor argues (and the trial court found) that the policy's autopsy requirement conflicts with the Statute because it removes the statutory presumption and places the initial burden of proving causation on the employee/claimant.

In its order the ALJ held, in relevant part:

2. The Tribunal does not find a conflict between Tennessee Code Annotated [s]ection 7-51-201, defining the reasonable presumption analysis and PM 74-02(3).

In its June 25, 2018 order, the trial court reversed the ALJ, finding:

1. Tenn[essee] Code Annotated [section] 7-51-201 . . . provides for a presumption that a death caused by hypertension of a firefighter is to have occurred in the line of duty and in the course of employment.

2. An autopsy is not required under the Statute in order to receive the benefits of the presumption the statute provides.

\*\*\*

4. The statutory intent of the Statute, pursuant to subsection Tenn[essee] Code Annotated [section] 7-51-201(b)[(2)], is to be "remedial in character and to permit and require any municipal corporation maintaining any permanent fire department to be covered by its provisions."

5. Under Tennessee law, "remedial statutes are liberally construed in the furtherance of their purpose." ***Price v. Allstate Insurance Company***, [614 S.W.2d 377, 381 (Tenn. Ct. App. 1981)].

6. . . . [T]he City's policy which only allows for the consideration of a death claim if an autopsy has been performed is at odds with the Statute. The Statute provides for the presumption regardless of whether an autopsy is performed. The Statute is to be construed liberally in the furtherance of its purpose.

7. The City's policy is also at odds here with the Statute's intent to be remedial and to require any municipal corporation maintaining any permanent fire department to be covered by its provisions because the autopsy requirement was used by the City in this case as a discharge from the provisions of the Statute.

In interpreting statutes, the Tennessee Supreme Court has provided the following guidance:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness. ***Martin v. Powers***, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. ***State v. Smith***, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." ***Mills v. Fulmarque, Inc.***, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information. ***Frazier v. State***, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. ***Baker v. State***, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. ***Armbrister v. Armbrister***, 414 S.W.3d 685, 704 (Tenn. 2013).

***Coleman v. Olson***, 551 S.W.3d 686, 694 (Tenn. 2018). Here, the Statute is unambiguous. It provides for two presumptions:

> 1. Any impairment of health . . . caused by disease of the lungs, hypertension or heart disease . . . shall be presumed . . . to have occurred . . . in the course of employment.
>
> 2. Any such condition . . . which results in death shall be presumed . . . to be a loss of life in the line of duty.

Tenn. Code Ann. § 7-51-201(b)(1). "When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning." ***Mills v. Fulmarque, Inc.***, 360 S.W.3d at 368. Under the plain language of the Statute, it is clear that the Legislature intended to give firefighters the presumption of causation contingent on the presence of an "impairment of health . . . caused by disease of the lungs, hypertension or heart disease," and on death resulting from such condition. Tenn. Code Ann. § 7-51-201(b)(1). Although, as discussed below, this presumption may be rebutted by "competent medical evidence," there is no statutory requirement that the claimant procure an autopsy to receive the benefit of such presumption. The Statute presumes causation so long as the firefighter suffered from one of the health conditions in the statute and the condition was not present at the time of employment. The City's autopsy policy shifts

the initial burden to show causation to the claimant/employee. The policy requirement removes the statutory presumption by creating an additional requirement (i.e., autopsy) before the presumption of causation attaches.

The Tennessee Supreme Court has explained "that a municipality may not pass an ordinance which conflicts with a statute, or indeed with a legislative policy, of the state." **City of Memphis v. S. Ry. Co.**, 67 S.W.2d 552, 553 (Tenn. 1934); *see also* **Long v. Taxing Dist. of Shelby Cty.**, 75 Tenn. 134, 136-37 (Tenn. 1881). An ordinance is a "local law of a municipal corporation, duly enacted by the proper authorities." Black's Law Dictionary (11th ed. 2019). Below ordinances are policies which are defined as "a standard course of action that has been officially established by an organization . . . ." Black's Law Dictionary (11th ed. 2019). Because a policy has a lesser status than an ordinance, it follows that a municipality or other organization may not pass a policy if it conflicts with a statute or with a legislative policy of the state. Here, the City Attorney established the rules, procedures, and guidelines for the OJI Program. As such, the City's requirement that a claimant procure an autopsy before he or she would be entitled to death benefits is purely an administrative policy. Because the policy usurps the statute by placing a greater burden on the claimant, the policy is in conflict with the statute and is unenforceable.[2]

As such, the trial court correctly held that

> . . . the City's Internal Policy is in direct conflict with the Statute and undermines the statutory protections given to firefighters and police officers, it is hereby null and void in its entirety. Therefore, [Ms. Pryor] has been prejudiced because the administrative findings, conclusion, and decision were based at least in part on the City's Internal Policy. The City's Internal Policy, and the Administrative Judge's reliance—to whatever extent—on such, is in violation of statutory provisions and is therefore arbitrary and capricious.

---

[2] In its brief, the City also argues that Dillon's Rule applies to this case. "At its most basic level, Dillon's Rule is a canon of statutory construction that calls for the strict and narrow construction of local governmental authority." **S. Constructors, Inc. v. Loudon Cty. Bd. of Educ.**, 58 S.W.3d 706, 710 (Tenn. 2001). Essentially, the Rule states that the only powers a municipality may exercise are those: (1) expressly granted; (2) necessarily implied or incident to the powers expressly granted; and (3) absolutely essential to the objective and purpose of the municipality. *Id.* Further, any doubt as to whether a municipality holds such power is construed against the municipality and against the existence of power. *Id.* The City's argument here is unavailing because the Statute does not provide the City with any authority to act contrary to the language in the Statute. Further, if there was any doubt that the City held some power to act, this Court would be required to construe our finding against the City and find that the City did not hold that power. *Id.*

Having affirmed the trial court's determination that OJI Policy PM 74-02(3) is in conflict with the Statute, we turn to the question of whether the trial court erred in remanding the case to the ALJ for a new hearing. We reiterate that our

> [r]eview under the UAPA . . . is more limited and is constrained by the provisions of Tennessee Code Annotated § 4-5-322(h) . . . . When reviewing a case under the UAPA, **after confirming that the agency has applied the proper legal principles**, we must consider the factual findings in dispute and determine whether the agency's basis for making the findings was reasonably sound. *City of Memphis*[, 238 S.W.3d at 243] (citation omitted).

*Pittman*, 360 S.W.3d at 388 (emphasis added). If the proper legal principles were not applied, this constitutes "a clear error in judgment," which can render a decision arbitrary and capricious. *Wade v. Tennessee Dep't of Fin. & Admin.*, 487 S.W.3d 123, 136 (Tenn. Ct. App. 2015) (citing *Jackson Mobilphone Co.*, 876 S.W.2d at 110-11). Under the UAPA, if a trial court determines that a decision is arbitrary and capricious, it may reverse, modify, or remand the case to the ALJ. Tenn. Code Ann. § 4-5-322(h). As set out in its order, the ALJ found that Ms. Pryor "failed to carry her burden of proof . . . to show a causal connection between Lieutenant Pryor's employment as a firefighter and his death." The ALJ's decision was based, in part, on its conclusion that there was no "conflict between Tennessee Code Annotated [s]ection 7-51-201, defining the reasonable presumption analysis and PM 74-02(3)." For the reasons discussed above, the ALJ's finding of no conflict was erroneous. Accordingly, to the extent the ALJ based its conclusion on an erroneous policy, this was clear error.

Additionally, it does not appear from the ALJ's order or oral ruling that he applied the "proper legal principles," i.e. the Statute. *Pittman*, 360 S.W.3d at 388. The ALJ did not reference the Statute as a basis for its findings of fact or conclusions of law. Similarly, the ALJ failed to state in his findings or conclusions whether Ms. Pryor was entitled to the statutory presumption of causation, or whether the City overcame the presumption by competent medical evidence. *Cf. Pittman*, 360 S.W.3d at 389 (stating that the ALJ specifically referenced the Statute in its findings and reached a conclusion concerning the statutory presumption). Because the ALJ failed to properly apply the Statute, the trial court concluded, in pertinent part, as follows:

> 9. Since the City's Internal Policy is invalid and void, the question arises as to whether the City has overcome [Ms. Pryor's] statutory presumption pursuant to Tenn. Code Annotated § 7-51-201. In other words, the question remains whether the parties can prove their case absent the City's Internal Policy.

10.  Therefore, this case is hereby remanded to the Administrative Judge to conduct a new hearing on the merits regarding whether the statutory presumption has been overcome by the City.  Specifically, there shall be no proof presented of the City's Internal Policy whatsoever and the City's Internal Policy shall not influence the proceedings in any way.

Under the provisions of the UAPA, we cannot conclude that the trial court's decision to remand the case to the ALJ to try the case on its merits was an abuse of discretion or otherwise erroneous.  The trial court has such discretion under the UAPA and properly exercised its discretion based on its findings and conclusions in this case.  *See* Tenn. Code Ann. § 4-5-322(h).

On remand, the ALJ is to apply the Statute without consideration of the City's policy.  The Statute contemplates a burden-shifting analysis, under which the claimant must first show: (1) the employee (who was injured or died) was employed by a regular fire department; (2) the employee suffered from a disease of the lungs, hypertension, or heart disease resulting in hospitalization, medical treatment, disability or death; and (3) prior to such claimed injury or death, the employee had been given a physical examination, which did not reveal a disease of the lungs, hypertension, or heart disease. Tenn. Code Ann. § 7-51-201(b)(1); *see Stone v. City of McMinnville*, 896 S.W.2d 548, 550 (Tenn. 1995); *Coffey v. City of Knoxville*, 866 S.W.2d 516, 517 (Tenn. 1993); *Perry v. City of Knoxville*, 826 S.W.2d 114, 115 (Tenn. 1991); *City of Oak Ridge v. Campbell*, 511 S.W.2d 686, 688 (Tenn. 1974).  If the claimant makes this initial showing, the presumption of causation attaches under the statute.  The burden then shifts to the municipality "[t]o overcome the presumption, [by offer of] affirmative evidence that there is not a substantial causal connection between the work of the employee so situated and the occurrence upon which the claim for benefits is based." *Stone*, 896 S.W.2d at 550 (citing *Coffey*, 866 S.W.2d at 519; *Perry*, 826 S.W.2d at 115).  In other words, once the causal presumption attaches, the municipality bears the burden of proving that there is not a substantial causal connection between the employee's occupation as a firefighter and his or her injury or death.  Under the Statute, the municipality must meet its burden by offering "competent medical evidence."  *See* Tenn. Code Ann. § 7-51-201(b)(1); *Stone*, 896 S.W.2d at 550; *Coffey*, 866 S.W.2d at 519; *Perry*, 826 S.W.2d at 115; *City of Oak Ridge*, 511 S.W.2d at 688-89.[3]  Only if the municipality overcomes the presumption by competent medical proof does the burden shift to the claimant to prove, by a preponderance of the evidence, that the employee's occupation as a firefighter caused his or her medical impairment and that the firefighter's condition resulted in his or her injury or death.  *See Bohanan v. City of Knoxville*, 136 S.W.3d 621, 625 (Tenn. 2004); *Stone*, 896 S.W.2d at 552; *Pittman*, 360 S.W.3d at 390.

---

[3] Further, "[i]n order to determine whether the [municipality overcame the] presumption . . . by competent medical proof, [the ALJ] must review not only the medical evidence but also other salient proof adduced in the case." *Stone*, 896 S.W.2d at 550.

- 11 -

Given our decision, all other issues are pretermitted.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, City of Memphis, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE